UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| David J. DiNunzio, | Case No.: 2:21-cv-00995-APG-NJK |
| Petitioner, | |
| v. | **Order** |
| Brian Williams, et al., | |
| Respondent. | |

David J. DiNunzio, a Nevada prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. For reasons that follow, I deny the petition.

**I. BACKGROUND[1]**

In August 2015, DiNunzio strangled his mother, Francine. Evidence presented to a grand jury in the Eighth Judicial District Court for Clark County, Nevada showed the following. DiNunzio was living with Francine. On the day of the murder, Francine tried several times to contact her friend Justine, who was the mother of Francine's grandchild and also a police detective. Within an hour of calling Francine back and leaving a message, Justine received a call from Francine's cell phone. When Justine picked up, she recognized the caller's voice as DiNunzio's. After a brief exchange, DiNunzio said, "God bless me, I think I just killed my mom."

---

[1] The information in this section is taken from the state court record filed at ECF Nos. 20/21 and this court's own docket. For ease of reading, I omit citations in this section, but cite to the record as necessary in support of my analysis in Section III below. I make no credibility findings or other factual findings in this section, which is merely a backdrop to my consideration of the issues.

When police officers responded to Francine's apartment, they found her dead in her bedroom with marks or bruises around her neck. The apartment was otherwise undisturbed with no signs of forced entry. An autopsy confirmed that the cause of death was strangulation. DiNunzio was arrested at a casino four days later. Francine's cell phone was missing from the apartment and never found.

Having been charged with murder and robbery, DiNunzio entered a negotiated plea of guilty to second-degree murder in June 2017. After a sentencing hearing in September 2017, the court sentenced him to 10-years-to-life. DiNunzio appealed.

The Nevada Court of Appeals affirmed the conviction. DiNunzio initiated state post-conviction proceedings in March 2019. After holding an evidentiary hearing on DiNunzio's claims, the state district court denied relief. DiNunzio appealed. The Nevada Court of Appeals affirmed the lower court's decision.

In May 2021, this court received DiNunzio's federal habeas petition with a motion for leave to proceed *in forma pauperis* that I denied. Upon payment of the filing fee, I ordered the Clerk of Court to serve the petition on the respondents.

In January 2022, the respondents moved to dismiss, claiming that DiNunzio failed to exhaust state court remedies for Ground 1 of his petition (a judicial bias claim) because he failed to allege a federal constitutional violation when he presented the claim on direct appeal. I denied the motion because, while DiNunzio failed to exhaust the claim in his direct appeal, he fairly presented it in his subsequent state post-conviction proceeding.

## II. STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides the following standard of review:

2

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough*

*v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

**III.  DISCUSSION**

**A. Ground 1 – Judicial Bias**

In Ground 1, DiNunzio alleges that he was deprived of his constitutional right to a fair trial due to bias harbored by the trial judge.  He cites to comments the trial judge made during his sentencing hearing.  Before sentencing DiNunzio, the judge stated, "irrespective of what your family says, what you say, what your attorneys say, I would give you as much time in prison as I could give you simply because of the nature of the offense of what you did." ECF No. 20-19 at 10.  The judge also stated, "if this would have went to trial and you were found guilty of first

4

degree murder, I would have given you as much as I could give you." *Id*. at 11.  DiNunzio also claims that the trial judge's comments about the presence of the media in the courtroom ("I'm glad the press is in here . . . because the public needs to know what kind of garbage goes on . . ." *Id.* at 10) shows that the judge's sentencing decision was improperly influenced by outside sources.

When evaluating a judicial bias claim in a federal habeas proceeding, the inquiry is not whether the judge committed judicial misconduct, but instead "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995).  The Ninth Circuit has identified three general circumstances in which an appearance of bias violates due process: (1) a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against one of the litigants;" (2) a judge who "becomes embroiled in a running, bitter controversy with one of the litigants;" and (3) a judge who "acts as part of the accusatory process." *Crater v. Galaza*, 491 F.3d 1119, 1130-31 (9th Cir. 2007) (citing cases).  A petitioner can prevail on a claim of judicial bias only if he overcomes a "strong presumption that a judge is not biased or prejudiced." *Sivak v. Hardison*, 658 F.3d 898, 924 (9th Cir. 2011) (quoting *Rhoades v. Henry*, 598 F.3d 511, 519 (9th Cir. 2010)).  "In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

The Nevada Court of Appeals denied DiNunzio's judicial bias claim on direct appeal, but DiNunzio had not presented the claim as a constitutional violation. ECF No. 20-29 at 2-3. When he presented the claim in his state post-conviction proceeding, the Nevada Court of Appeals dismissed the claim based on the law-of-the-case doctrine. ECF No. 21-28 at 4. Thus, it is arguable that the deferential standard imposed by § 2254(d) does not apply because the state court did not adjudicate Ground 1 on the merits. *See Cone v. Bell*, 556 U.S. 449, 472, (2009). Even considered de novo, however, the claim fails to serve as grounds for habeas relief.

I agree that the trial judge's comments indicated improper bias to the extent they showed he closed his mind to presentation of all the evidence. *See Cameron v. State*, 968 P.2d 1169, 1171 (1998) (citing Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 4.07, at 105 (2d ed. 1995)). Indeed, I may have joined the dissenting justice in DiNunzio's direct appeal, who concluded that the comments were grounds for reversal. *See* ECF No. 20-29 at 3-4. As a federal judge, however, I have "no supervisory authority over criminal proceedings in state courts," and "[t]he only standards [I] can impose on the states are those dictated by the Constitution." *Duckett*, 67 F.3d at 741 (citation omitted).

Here, there is nothing in the record to suggest that the trial judge based his sentencing decision on improper information or any extrajudicial source. The sentence he imposed was one of only two possible sentences for second-degree murder (Nev. Rev. Stat. § 200.030(5)) and was in accordance with what the pre-sentence investigation report recommended (ECF No. 20-19 at 6). The transcript of the sentencing hearing indicates that his decision to impose the harsher sentence was based on DiNunzio's criminal history, which showed that he was "a person that can't control his own behavior," and the fact that he killed his mother, someone who cared for him. ECF No. 20-19 at 9-11. Thus, the judge's "knowledge and the opinion it produced were

properly and necessarily acquired in the course of the proceedings." *Liteky*, 510 U.S. at 551. And while the judge commented on the presence of the media, the transcript of the sentencing hearing does show that their presence impacted his sentencing decision. In sum, the trial judge may have made some objectionable comments, but the comments were "not 'of sufficient gravity to warrant the conclusion that fundamental fairness has been denied.'" *Duckett*, 67 F.3d at 741 (quoting *Daye v. Attorney General of New York*, 712 F.2d 1566, 1572 (2d Cir.1983)). Thus, I deny Ground 1.

### B. Ground 2 – Ineffective Assistance of Counsel

In Ground 2, DiNunzio alleges that he was deprived of his constitutional right to effective assistance of counsel at his sentencing hearing. He alleges his trial counsel was ineffective because counsel failed to object to the trial judge's improper comments at sentencing and made disparaging comments about him (DiNunzio) in his arguments to the court. As to the latter, DiNunzio cites counsel comparing DiNunzio to himself and referring to DiNunzio as a "screwup." He also faults counsel for not presenting mental health evidence or information gathered by a mitigation specialist appointed to assist him.

To establish a claim of ineffective assistance of counsel (IAC), a petitioner must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88. Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Having cited to the *Strickland* standard, the Nevada Court of Appeals in DiNunzio's post-conviction proceeding addressed most of DiNunzio's allegations in Ground 2:

> First, Dinunzio claimed counsel was ineffective for failing to mention his multiple mental health diagnoses at sentencing. Dinunzio claimed he had been diagnosed with major depression, delusional disorder, alcohol use disorder, methamphetamine disorder, and adjustment disorder. The district court held an evidentiary hearing on this claim. Counsel testified he knew about Dinunzio's diagnoses but chose not to use them at sentencing because they were not "Axis 1 diagnoses." Counsel did not believe the diagnoses were severe enough to work in Dinunzio's favor at sentencing and chose to focus on other arguments.
>
> The district court found that Dinunzio failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at sentencing had counsel presented this evidence. Based on the testimony presented at the evidentiary hearing, we conclude the district court did not err by denying this claim. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (observing strategic decisions are virtually unchallengeable under most circumstances).
>
> Second, Dinunzio claimed counsel was ineffective at sentencing for comparing Dinunzio to himself. At the evidentiary hearing, counsel explained he made the comparison to show the affect alcohol and drugs had on Dinunzio's life and to humanize Dinunzio. And he knew, from previous interactions with the district court, that the district judge took that type of argument to heart and listened to it. The district court found that Dinunzio failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at sentencing had counsel not made this argument at sentencing. Based on the testimony presented at the evidentiary hearing, we conclude the district court did not err by denying this claim. *See id*.

ECF No. 21-28 at 3-4.

DiNunzio has not established that the state court's adjudication resulted in decision was that was contrary to, or involved an unreasonable application of, clearly established federal law or that was based on an unreasonable determination of the facts. At the sentencing hearing, trial counsel attributed DiNunzio's numerous "interactions with the criminal justice system" to his longstanding problem with drugs and alcohol and argued that DiNunzio was "under the influence" when he killed his mother. ECF No. 20-19 at 7. He then pointed out that DiNunzio

was "now 25 months sober" and suggested that, but for his drug and alcohol problem, he would have been successful like his brother. *Id*. at 8. Trial counsel testified at the post-conviction hearing that both the comparison of DiNunzio to himself and the references to DiNunzio being a screwup were part of his effort to impress upon the judge that DiNunzio's circumstances would have been different had he not fallen into drug and alcohol addiction. ECF No. 21-10 at 35-38.

Trial counsel's decision to focus on DiNunzio's drug and alcohol problem and omit some of his other mental health problems was reasonable under the circumstances. There is also nothing in the record to suggest a reasonable probability of a better outcome had counsel included additional mental health evidence. With respect to the mitigation specialist, DiNunzio fails to identify the specific information she would have been able to provide or explain how it would have affected the judge's sentencing decision. As to counsel's failure to object to alleged judicial misconduct, DiNunzio cannot show prejudice because the appellate court addressed the issue notwithstanding counsel's failure to object at the sentencing hearing. Because DiNunzio fails to meet either prong of the *Strickland* standard, I deny Ground 2.

**IV. CONCLUSION**

For the reasons set forth above, DiNunzio is not entitled to habeas relief.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits,

a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

I decline to issue a certificate of appealability for my resolution of any procedural issues or any of DiNunzio's habeas claims.

**I THEREFORE ORDER** that DiNunzio's petition for a writ of habeas corpus (ECF No. 8) is DENIED. The Clerk shall enter judgment accordingly and close this case.

**I FURTHER ORDER** that a certificate of appealability is DENIED.

Dated: June 23, 2023

_____
U.S. District Judge Andrew P. Gordon